IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

          Plaintiff,

v.

CARGILL HEATING & AIR
CONDITIONING CO., INC.,
MICHAEL EARL GALSTAD, and
CARGILL HEATING & AIR
CONDITIONING CO., INC., SAVINGS
PLAN,

          Defendants.

OPINION & ORDER

14-cv-228-jdp

---

Plaintiff in this case is the Secretary of Labor, operating in his capacity as an enforcer of the Employee Retirement Income Security Act, commonly known as ERISA. The three defendants are: (1) a troubled small business, Cargill Heating & Air Conditioning Co., Inc., (Cargill); (2) its majority owner, Michael Earl Galstad; and (3) the employee benefit plan operated for the employees of the business, Cargill Heating & Air Conditioning Co., Inc., Savings Plan (the Plan). The Secretary alleges that Cargill and Galstad breached their fiduciary duties by failing to make required payments to the Plan. The Secretary seeks the restoration of almost $250,000 owed to the Plan, and he seeks to permanently enjoin Cargill and Galstad from serving as fiduciaries or service providers to any ERISA-covered plan.

The underlying facts are apparently not disputed, but there is a complication: about six months before the Secretary filed this action, Galstad had filed a petition for Chapter 7 personal bankruptcy, *In re: Galstad*, No. 13-14392 (Bankr. W.D. Wis.), a fact that the Secretary acknowledged in a footnote to the complaint in this action. In answer to the Secretary's complaint, defendants pleaded as an affirmative defense that this action "violated the automatic

stay or at least [is] unnecessarily duplicative placing an unfair burden on Galstad." Dkt. 7, at 2. The Secretary has moved to strike this affirmative defense as legally insufficient, Dkt. 8, on the grounds that the government's enforcement of ERISA obligations is an exercise of its police and regulatory power, which falls within an exception to the automatic stay provided in 11 U.S.C. § 362(b)(4). Dkt. 8.[1] Defendants oppose the motion, implicitly asking the court to shut down this case as either a violation of the stay or a waste of time.

The court will grant the Secretary's motion to strike defendants' first affirmative defense for two primary reasons. First, the automatic stay does not prevent the Secretary from proceeding against Cargill or the Plan, neither of which is in bankruptcy. Second, even as to Galstad himself, this action falls within the § 362(b)(4) exception and it is therefore not subject to the automatic stay. To be clear, however, the Secretary may not enforce any money judgment against Galstad, except through the bankruptcy court, a process the Secretary has already initiated.

## ANALYSIS

The Bankruptcy Code imposes a stay on the commencement or continuation of almost all judicial proceedings against a debtor. 11 U.S.C. § 362(a)(1). The purpose of the stay is to protect creditors by "preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382-83 (6th Cir. 2001) (citation and quotation marks omitted). The stay is automatic, beginning immediately when a bankruptcy petition is filed. Thus, Galstad's bankruptcy petition, filed on September 4, 2013, immediately imposed an automatic stay on

---

[1] The Secretary also moved to strike defendants' third affirmative defense (failure to mitigate), but the parties have since stipulated to the dismissal of that defense. Dkt. 10.

most judicial proceedings against Galstad. This action, filed March 25, 2014, would violate the automatic stay of proceedings against Galstad, unless it falls within an exception to the automatic stay.

But Galstad did not actively assert his putative right to the stay. He pleaded the automatic stay as an affirmative defense, but he did not seek to enjoin prosecution of this case against him or otherwise raise the issue with this court. Defendants' affirmative defense relying on the automatic stay would have lain fallow while the case proceeded, but for the Secretary's pressing the issue with his motion to strike.

The Secretary contends that this action falls within the exception to the automatic stay that allows a governmental unit to enforce its police and regulatory powers against a debtor in bankruptcy. 11 U.S.C. § 362(b)(4). Governmental policy and regulatory powers are typically those that safeguard public health, welfare, and safety. The Bankruptcy Act's legislative history shows that Congress intended to exempt from the automatic stay government suits relating to fraud, environmental protection, consumer protection, safety, and the like—including suits for damages for violations of such laws. H.R. Rep. 595, 95th Cong. 1st Sess. 343 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6299. One important purpose of this exception is to prevent wrongdoers from using bankruptcy to evade enforcement of regulations concerning public welfare and safety. *In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004); *In re First Alliance Mortgage Co.*, 263 B.R. 99, 107 (BAP 9th Cir. 2001) (noting that fundamental policy of § 362(b)(4) is to "prevent[ ] the bankruptcy court from becoming a 'haven for wrongdoers'"). On the other hand, a suit by the government in its capacity as a commercial actor seeking to achieve some collection advantage over other creditors would not be excepted from the automatic stay. *See, e.g., In re Nat'l Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996) (determining that city's termination of a waste-hauling contract was an action taken as a

3

commercial actor, not pursuant to its police and regulatory powers), subsequently aff'd, 129 F.3d 1052 (9th Cir. 1997).

Courts apply two tests to determine whether a governmental action falls within the § 362(b)(4) exception: (1) the pecuniary purpose test and (2) the public policy test.[2] The two tests, applied together, "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors." *Hosp. Staffing Servs.*, 270 F.3d at 389. Although any case brought by the government may further both private and public interests, a case is within the § 362(b)(4) exception if the private interests do not significantly outweigh the public benefits. *See BDK Indus.*, 296 B.R. at 168 ("When an action substantially adjudicates private rights and only incidentally serves the public interest, courts should regard the suit as outside the police power exception.").

### A. Pecuniary purpose test

The question under the pecuniary purpose test is whether the action advances a governmental interest in public welfare or safety or whether the government seeks to advance its pecuniary interest as an ordinary commercial actor. Proceedings that primarily relate to matters of public safety or public policy will not be stayed. *Chao v. BDK Indus., LLC*, 296 B.R. 165, 167 (C.D. Ill. 2003) (citing *Hosp. Staffing Servs.*, 270 F.3d at 385-86). "[C]ourts applying the pecuniary purpose test must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation

---

[2] One of defendants' contentions is that the Secretary's argument wrongly relies on corporate Chapter 11 cases, whereas Galstad's bankruptcy is an individual Chapter 7. By its terms, § 362(b)(4) applies to both Chapter 7 and Chapter 11, and the Secretary has cited both Chapter 7 and Chapter 11 cases. The fact that Galstad's bankruptcy is a Chapter 7 is not material to the issue before the court.

to the debtor's estate." *Solis v. Wallis*, No. 11-cv-3019, 2012 WL 3779065, at *7 (N.D. Ill. Aug. 30, 2012) (citing *Solis v. Caro*, No. 11-cv-6884, 2012 WL 1230824, at *5 (N.D. Ill. Apr. 12, 2012)). Thus, the focus is on whether the proceeding would result in a pecuniary advantage to the government vis-à-vis other creditors of the bankruptcy estate. *Hosp. Staffing Servs.*, 270 F.3d at 388-89.

The Secretary correctly points out that the government has no pecuniary interest in Galstad's bankruptcy estate. Dkt. 9, at 5-7. Defendants contend that the Secretary's interest is pecuniary because the only relief actually at stake in this case is monetary. Defendants say that they have repeatedly offered to stipulate to the injunctive relief sought by the Secretary. Dkt. 24. In addition, they say that Cargill is now defunct and Galstad is no longer a fiduciary, so defendants contend that injunctive relief is not an issue, there is no ongoing danger to the public, and thus only money is at stake.

Defendants' argument misses the mark for two reasons. First, the Secretary can secure meaningful injunctive relief even if Cargill is defunct and Galstad is currently working as an employee and not serving as a fiduciary to an ERISA plan. *See, e.g., BDK Indus.*, 296 B.R. at 169 ("The fact that Defendants are currently inoperative does not render this cause moot. There is nothing to prevent defendants from resuming their operations or beginning anew.") (internal citations omitted); *In re Lenz Oil Service, Inc.*, 65 B.R. 292, 294-95 (Bankr. N.D. Ill. 1986). Even if Cargill does not resume operations, the fact that Cargill is "defunct" or even dissolved does not extinguish the corporation's obligations. *See* Wis. Stat. § 180.1405 (regarding effects of dissolution).

Second, even though the Secretary seeks a money judgment against defendants, that does not make the government's interest a pecuniary one. The Secretary asks the court to order Cargill and Galstad to: "make good all losses to the Plan . . . resulting from fiduciary breaches

committed by them or for which they are liable;" correct their prohibited transactions; and disgorge their ill-gotten gains. Dkt. 1, at 8-9. "The fact that money is sought in a proceeding does not necessarily mean the purpose of the litigation is purely pecuniary." *United States v. NCR Corp.*, No. 10-cv-910, 2012 WL 6042222, at *1 (E.D. Wis. Jan. 25, 2012) (determining that quest for money judgment for environmental cleanup is not a pecuniary purpose). Seeking reimbursement from defendants for money that should have been paid to the Plan's participants is not a purely pecuniary interest. Entering a money judgment for amounts owed by defendants, including Galstad, is not at odds with the § 362(b)(4) exception. Any money recovered will benefit the Plan's participants and beneficiaries, not the government. *See Dole v. Hansbrough*, 113 B.R. 96, 97-98 (D.D.C. 1990); *Caro*, 2012 WL 1230824, at *5 (concluding that the Secretary had no pecuniary interests in the debtor's bankruptcy estate where any amounts recovered would inure to the benefit of the employee benefit plan).

Because the Secretary's purpose in this case is not to advance the government's entitlement to a part of Galstad's bankruptcy estate, to the detriment of other creditors of the estate, this action satisfies the pecuniary purpose test. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986).

B. **Public policy test**

Under the public policy test, the question is whether the purpose of the action is primarily to effectuate a public policy or primarily to advance private interests. *Id.* This is sometimes a close call, because governmental enforcement actions often advance the interests of some private parties. In this case, the Secretary's suit will advance the interests of Cargill's employees. Nevertheless, ERISA's stated goal is to serve the public interest:

> The Congress finds . . . that the continued well-being and security of millions of employees and their dependents are directly affected by these [employee benefit] plans; that they are affected with a national

6

> public interest; . . . that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, . . . that disclosure be made and safeguards provided with respect to the establishment, operation, and administration of such plans . . .

29 U.S.C. § 1001(a). Fiduciaries of employee benefit plans are expected to adhere to standards of conduct established by Congress, which also provided for "appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Although in some sense, every law advances some governmental interest, ERISA regulations are the result of Congress's pointed expression of its intent to advance employee benefits plans through a comprehensive set of regulations.

The Secretary contends that the courts that have considered the question have "consistently and repeatedly" concluded that governmental actions to enforce ERISA fall within the exception and are not subject to the automatic stay. Defendants cite no authority to the contrary. Although the principle might not be so uncontroversial as the Secretary suggests, courts have generally found that the primary purpose of governmental actions for violations of ERISA is to serve the public interest. *See, e.g., Hansbrough*, 113 B.R. at 98 ("[A]ctions brought by the Secretary to enforce provisions of ERISA are actions to effectuate public policy, and incidental benefits from the enforcement of the Act should not convert such enforcement from one of public policy to one characterized as an adjudication of individual rights.") (citation omitted); *Caro*, 2012 WL 1230824, at *4 ("Courts have consistently held that actions by the Secretary of Labor to enforce ERISA's provisions constitute an exercise of the 'police and regulatory power.'").

However, not every enforcement action brought by the Department of Labor passes the public policy test. An informative example is provided by *Hosp. Staffing Servs.*, a Fair Labor Standards Act case. In that case, the Secretary filed suit in district court alleging that an

7

employer, already in bankruptcy, had failed to pay required minimum wages and overtime. Relying on the "hot goods" provision of 29 U.S.C. § 215(a), the Secretary sought to enjoin the bankruptcy trustee from transferring certain business assets that had been produced by the underpaid employees until they received the wages due to them. 270 F.3d at 379-80. Over the trustee's objection, the district court granted the injunction, concluding that the suit was an exercise of the Secretary's police powers and therefore exempt from the automatic stay. But on appeal, the Sixth Circuit concluded that "[t]he peculiar circumstances . . . reveal that the Secretary has undertaken this enforcement action not in furtherance of public policy but primarily to assert and protect the private rights of certain individuals." *Id.* at 382.

The Secretary's enforcement action in *Hosp. Staffing Servs.* is somewhat similar to this suit in that, in both cases, the Secretary seeks to recover payment for aggrieved employees. But there is an important difference. In *Hosp. Staffing Servs.*, the Secretary's suit had the result of putting the employees in a position superior to that of the other creditors. Because the business assets were not available to the trustee until the wages due were paid, the employees effectively gained super-priority over all other creditors. Thus, *Hosp. Staffing Servs.* is an example of a case in which the primary effect of the Secretary's suit was to give priority to the claims of certain private parties over other creditors. But that is not the case here: if the Secretary secures a judgment against Galstad, the Secretary can enforce that judgment only by pursuing a claim in the bankruptcy proceeding, and that judgment will have only the priority the bankruptcy court accords it. In other words, in this case, the Secretary and the aggrieved employees will have to take their place in line with Galstad's other creditors.

Accordingly, this case falls within the main line of cases in which courts have concluded that the Secretary's primary purpose in ERISA enforcement actions is to serve the public

8

interest by safeguarding the benefits promised to participants and beneficiaries of employee benefit plans. This action satisfies the public policy test.

### C. Relation to the bankruptcy proceeding

Defendants did not effectively oppose the Secretary's motion to strike the affirmative defense, and the Secretary's motion will be granted. But defendants raise another issue that warrants comment by the court. Here is the background: The Secretary has filed an adversary complaint in the United States Bankruptcy Court for the Western District of Wisconsin seeking to have Galstad's debt to the Plan declared non-dischargeable. Adversary Complaint, *In re: Galstad*, No. 13-14392 (Bankr. W.D. Wis. Mar. 17, 2014), ECF No. 56. The adversary complaint is pending and set for a three-day trial in the bankruptcy court beginning on January 14, 2015.[3] *See* Dkt. 15 in *Perez v. Galstad*, Adversary Proceeding No. 14-46 (Bankr. W.D. Wis.).

Defendants contend that the adversary complaint renders this case redundant, suggesting that this case should be dismissed or stayed in favor of the bankruptcy. But this case is not redundant, because neither Cargill nor the Plan are in bankruptcy, and the Secretary could not obtain any relief from either of those entities in the bankruptcy. But defendants have a point regarding Galstad; it would be inefficient for this court to rule on issues pending and set for prompt resolution in the bankruptcy court. Indeed, absent a motion to remove the adversary action from the bankruptcy, this court would not have jurisdiction to decide those matters that are now properly before the bankruptcy court. Those issues are the amount of Galstad's debt to the Plan and whether that debt is dischargeable. The dischargeability question is for the bankruptcy court alone, but the question of the amount of Galstad's debt is also at issue in this court.

---

[3] The Notice of Trial and Pretrial Order is at Dkt. 15 in *Perez v. Galstad*, Adversary Proceeding No. 14-46 in the United States Bankruptcy Court for the Western District of Wisconsin.

Nevertheless, the court sees no reason to stay this action. The court notes that neither party has expressly asked for a stay, although that request is implicit in defendants' response to the Secretary's motion to strike. This action will proceed on the current calendar. The parties can conduct whatever discovery they think is necessary for this case, some of which might also be needed for the adversary proceeding. The court expects the parties to cooperate and work efficiently in both cases. Before any party asks this court to rule substantively on the amount of defendants' obligations, the party should inform the court of the status of the adversary proceeding. And, it bears repeating that the Secretary may enforce any money judgment against Galstad only through the bankruptcy court.

ORDER

IT IS ORDERED that:

Plaintiff's motion to strike defendants' first affirmative defense, Dkt. 8, is GRANTED.

Entered this 20th day of October, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge